UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LAMONT ZAMICHIELI : | CIVIL ACTION NO. 3:20-0180 |
| Plaintiff : | |
| : | (JUDGE MANNION) |
| v. : | |
| J.B. MERRITTS, *et al.*, : | |
| Defendants : | |

## MEMORANDUM

### I. Background

Plaintiff, Lamont Zamichieli, an inmate currently confined at the Phoenix State Correctional Institution, Collegeville, Pennsylvania, filed the above captioned civil rights action pursuant to 42 U.S.C. §1983. (Doc. 1, complaint). He complains of actions which occurred at his former place of confinement, the State Correctional Institution at Huntingdon (SCI-Huntingdon), Pennsylvania. (Doc. 1, complaint). The named Defendants are the Pennsylvania Department of Corrections; Huntingdon County; seventeen employees of SCI-Huntingdon and four John/Jane Doe Defendants. Id. Plaintiff's claims, encompassed in a sixteen-page diatribe, set forth allegations of unsanitary conditions of confinement, deliberate indifference to his serious medical and mental health needs, patterns of excessive use of force, failure to intervene, delay/denial of medical care, sexual

abuse/assault, retaliation, interference with mail, denial of due process, and unlawful search and seizure. Id.

By Memorandum and Order dated September 28, 2021, the Court granted Defendants' three separate motions to dismiss Plaintiff's complaint for Plaintiff's failure to comply with Fed R. Civ. P. 20(a)(2) and afforded Zamichieli the opportunity to file an amended complaint. (Docs. 62, 63).

On October 12, 2021, Plaintiff filed his amended complaint. (Doc. 68).

## II. ALLEGATIONS IN AMENDED COMPLAINT

Plaintiff's amended complaint is comprised of thirty-four pages, containing fifty-four factual averments, resulting in alleged violations of Plaintiff's First, Eighth and Fourteenth Amendments. (Doc. 68). The Court summarizes Plaintiff's specific allegations below.

In 2015, the DOC recommended that Plaintiff participate in a treatment program titled "Thinking for a Change" but then additionally recommended he participate in a "Mod-High Intensity" program after receiving a misconduct charge. (Doc. 68 ¶23). Plaintiff claims that he has been assigned a "D stability," indicating that he is seriously mentally ill, with a diagnosis of schizoaffective disorder depressive type. (Doc. 68, ¶¶23-24).

In April 2017, Plaintiff was transferred to SCI Huntingdon, was placed in the Diversionary Treatment Unit ("DTU") and remained there until May 2019 without access to his two prescribed treatment programs. (Doc. 68 ¶24). The DTU is a unit used to treat seriously mentally ill inmates, such as himself. (Doc. 68, ¶25). Plaintiff claims that according to DOC policy, he should have been permitted ten structured hours a week in out of cell programs such as the above two programs and ten unstructured hours of time out of their cells, but Defendants denied him those programs. Id. He believes that since programming affects his eligibility for parole, it should be facilitated by psychology staff, counselors, and treating physicians. (Doc. 68, at ¶¶26, 29).

Because he was denied access to the programs, he filed numerous grievances on the subject between October 2017 and March 2018, which were ignored or intercepted by staff. Id. at ¶¶30-31. Plaintiff told Defendants he felt suicidal. Id. at ¶49. Between April and June 2018, Plaintiff was admitted to a Psychiatric Observation Cell ("POC") numerous times after experiencing suicidal thoughts. Id. at ¶35.

Defendants retaliated against him for filing grievances by assaulting him, and then superior staff were deliberately indifferent to Plaintiff's safety concerns. Id. at ¶¶60-62.

- 3 -

In January 2021, Plaintiff was denied parole based on his misconduct charges, failure to complete his recommended programming, and poor behavior. Id. at ¶¶63-64. The parole denial states that he will be reviewed upon the completing of his programming. Id. at ¶65. But since he is in the Restricted Housing Unit ("RHU") serving time for misconduct charges, he is not eligible for programming. Id.

In March 2021, Plaintiff attempted suicide by diving off the second tier of a housing unit while experiencing hallucinations, which continued after he was taken to a POC. Id. at ¶34.

Specifically, Plaintiff alleges the following pertaining to the DOC Defendants:

### Deputy Superintendent Brumbaugh

Plaintiff claims that Defendant Brumbaugh is the Deputy Secretary of Facility Management and that in April 2018, he wrote to Brumbaugh about "retaliation on inmates who file grievances on [staff] or request to go to POC on their shift." (Doc. 68 ¶47). He did not respond. Id.

### CO Chilcote

Dunkle told Chilcote and others to destroy evidence of the assault on Plaintiff on March 21, 2018. (Doc. 68 ¶ 44).

### Lt. Dunkle

On March 21, 2018, Plaintiff was escorted by Dunkle to the DTU without a handheld camera, contrary to policy. (Doc. 68 ¶¶37-44). Dunkle sexually harassed him and made threats towards him to retaliate against him for filings grievances on him and other staff. Id. Then Dunkle sexually assaulted him. Id. Plaintiff was attacked a second time by Dunkle in the strip cage and was sprayed with OC spray. Id. Dunkle told Chilcote and others to destroy evidence of the assault. Id.

### C.O. Henry

Plaintiff was attacked by Henry in the strip cage on March 21, 2018. (Doc. 68, ¶43). Henry was worried about Plaintiff reporting the assault by Dunkle. (Doc. 68 ¶44). On April 19, 2018, Merritts told Henry to pepper spray Plaintiff because he was going to file a sexual abuse report. (Doc. 68 ¶48).

### Captain House

Plaintiff wrote to House in April 2018 about the alleged retaliation. (Doc. 68 ¶47). He did not respond. Id.

### Unit Manager Kendrick

Plaintiff wrote to Kendrick in April 2018 about the alleged retaliation. (Doc. 68 ¶47). He did not respond. Id.

### Lt. Maxwell

Maxwell accused Plaintiff of hallucinating a sexual assault, said that the camera footage showed no assault occurred, and blamed his mental health. (Doc.68, ¶46). Maxwell told Plaintiff the camera footage of the assault would be destroyed. Id.

Plaintiff wrote to Maxwell in April 2018 about the alleged retaliation. (Doc. 68 ¶47). He did not respond. Id.

### C.O. Merritts

On April 19, 2018, Merritts told Henry to pepper spray Plaintiff because he was going to file a sexual abuse report. (Doc. 68 ¶48). Plaintiff was attacked by Merritts with oleoresin capsicum ("OC") spray. Id. at ¶49. Plaintiff was issued a misconduct for this incident that falsely alleged he had been attempting to assault Merritts. Id.

On August 19, 2018, Parkes reminded Merritts about Plaintiff's pending grievances and sexual abuse claim. Id. ¶52. Then Merritts grabbed his hands and slammed them against the metal food aperture in the cell door. Id. at ¶53. Merritts wrote a misconduct charge alleging Plaintiff was attempting to assault him. Id. at ¶55.

### C.O. Parkes

Parkes was worried about Plaintiff reporting the assault by Dunkle on March 21, 2018. (Doc. 68 ¶44). On August 19, 2018, Parkes reminded

Merritts about Plaintiff's pending grievances and sexual abuse claim and placed a shield in front of his cell door. Id. ¶52 & 56.

### CCPM Spyker

Plaintiff wrote to Spyker in April 2018 about the alleged retaliation. (Doc. 68 ¶47). She did not respond. Id.

### Deputy Superintendent Walters

Plaintiff wrote to Walters in April 2018 about the alleged retaliation. (Doc. 68 ¶47). He did not respond. Id.

### Secretary Wetzel

Wetzel, who was the secretary of the Pennsylvania Department of Corrections, was sued by the Disability Rights Network ("DRN") of PA. (Doc. 68, ¶27). The case settled in 2015 and was done to benefit seriously mentally ill inmates such as Plaintiff. (Doc. 68, ¶27). Plaintiff claims that as a seriously mentally ill prisoner, the settlement should benefit him. Id. DTUs were created as part of the settlement. Id. at ¶38. Plaintiff wrote to Wetzel in April 2018 about the alleged retaliation. (Doc. 68 ¶47). He did not respond. Id.

### CRNP Cousins

Plaintiff claims that CRNP Cousins is a psychiatric mental health nurse, who is contracted to work at SCI Huntington (Doc. 68, ¶16). Plaintiff alleges that on March 18 or 19, 2018, CRNP Cousins denied Plaintiff psychiatric

medications because she believed that he did not need them (Doc. 68, ¶32). Plaintiff further claims that CRNP Cousins discontinued his medications in retaliation for filing grievances that he filed against her and other Defendants in November and December of 2017 and January, February, and March of 2018 (Doc. 68, ¶33). CRNP Cousins also allegedly began the process of adjusting Plaintiff's D-code status, which was previously approved by Co-Defendant Wetzel (Doc. 68, ¶36). Plaintiff claims that this denied him the benefits of programs given to inmates with a D-code (Doc. 68, ¶36).

### Huntingdon County

Plaintiff claims that Huntingdon County "is the county that encouraged a policy upon seriously mentally ill inmates at SCI-Huntingdon as the county created policy to use patterns of retaliatory excessive force and several assaults upon inmates. The County knew of policy custom but did not correct conditions upon being notified repeatedly of the actions." (Doc. 68, ¶17).

### C.O. Spory

Plaintiff claims that he filed multiple grievances against Defendant Spory over a period of months. (Doc. 68, ¶30). Spory and another officer were told by Dunkle to pepper spray Plaintiff. (Doc. 68, ¶44).

Presently before the Court are Defendants' three separate motions to dismiss Plaintiff's amended complaint for failure to comply with Federal

Rules of Civil Procedure 20. (Docs. 72, 73, 94). Also before the Court is Defendant, Huntingdon County's motion to dismiss for failure to state a claim. (Doc. 69). For the reasons that follow, the Court will grant Defendants' motions to dismiss.

### III. MOTION TO DISMISS

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests. See Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief. See Fed. R. Civ. P. 8(a). Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for its "failure to state a claim upon which relief can be granted." See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010). To prevent

dismissal, all civil complaints must set out "sufficient factual matter" to show that their claims are facially plausible. See Iqbal, 556 U.S. at 678; Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct: "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.' " See Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, the Third Circuit has identified the following steps that a district court must take when reviewing a 12(b)(6) motion: (1) identify the elements that a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (internal citations and quotation marks omitted). The Third Circuit has specified that in ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."

See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

In the context of *pro se* prisoner litigation, the court must be mindful that a document filed *pro se* is "to be liberally construed." See Estelle v. Gamble, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can be dismissed for failure to state a claim only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

## IV. DISCUSSION

### A. Motion to Dismiss Huntingdon County

Municipalities and other local government bodies, such as Huntingdon County, are "persons" within the meaning of §1983. See Sanders v. Susquehanna County Jail, No. 3:CV-05-2271, 2005 WL 2990697, at *2 (M.D. Pa. Nov.8, 2005) (holding that Susquehanna County is a person for §1983 purposes); see also Monell v. Dep't of Social Servs., 436 U.S. 658, 690-91 (1978).

Municipalities and other local government entities may not be held liable under §1983 for the acts of their employees under a theory of *respondeat superior* or vicarious liability. Bd. of County Comm'rs v. Brown, 520 U.S. 397, 403 (1997); see also Colburn v. Upper Darby Twp., 946 F.2d 1017, 1027 (3d Cir.1991). However, a municipality may be held liable if the plaintiff can "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." Id. (citing Monell, 436 U.S. at 694). A policy is an official proclamation or edict of a municipality, while a custom is a practice that is "so permanent and well settled as to virtually constitute law." Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir.1996) (quoting Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir.1990) (citations omitted).

Plaintiff alleges in his amended complaint that Huntingdon County encouraged, created, or knew about policies at the State Correctional Institution at Huntingdon concerning seriously mentally ill inmates. Plaintiff, however, does not reference any county policy that was put in place concerning mentally ill inmates. The only specific policy he references is PA DOC 13.8.1, section 14 (see Doc. 68, ¶¶ 26, 29)), a policy promulgated by the Pennsylvania Department of Corrections (DOC). Moreover, the named Defendants are state DOC employees, not county employees. Thus, Plaintiff's allegations are insufficient to impute liability on Huntingdon County,

as Huntingdon County is not responsible for the control and operation of a Commonwealth institution such as SCI-Huntingdon. See Commonwealth v. Danysh, 2003 PA Super 348, 833 A.2d at 153 (finding that DOC is an administrative agency within the Executive Branch, see 71 P.S. §61 (creating DOC among other executive departments), and possesses authority to operate the State Correctional Institutions throughout the state, see 71 P.S. §§310-0, 310-1, and as the operator of the State Correctional Institutions, it has a wide range of responsibilities relating to the care and treatment of inmates and management of the state prisons). Thus, Defendant, Huntingdon County's motion to dismiss will be granted.

### B. Remaining Defendants' Motions to Dismiss

The remaining Defendants move to dismiss Plaintiff's amended complaint for failing to comply with this Court's September 28, 2021 Order, (See Doc. 63), directing Plaintiff to file an amended complaint that complies with Fed.R.Civ.P. 8 and Fed.R.Civ.P. 20(a)(2). Specifically, Defendants argue that Plaintiff's amended complaint seeks to combine separate claims regarding his mental health, excessive force by corrections officers, alleged sexual assault claims and breach of contract claims against thirteen Defendants. (Doc. 68). The Court agrees. Plaintiff, again, attempts to bootstrap several separate and distinct claims for relief against different

- 13 -

Defendants at different time frames, in violation of Federal Rules of Civil Procedure 8 and 20.

Additionally, Defendants argue that several of Plaintiff's claims are barred by the statute of limitations. Specifically, Defendants argue that all claims based on events prior to February 3, 2018, two years prior to the date the Plaintiff's original complaint was filed, are barred as a matter of law.

"A complaint is subject to dismissal for failure to state a claim on statute of limitations grounds only when the statute of limitations defense is apparent on the face of the complaint." Wisniewski v. Fisher, 857 F.3d 152, 157 (3d Cir. 2017). A claim brought pursuant to 42 U.S.C. §1983 is subject to the same statute of limitations that applies to personal injury tort claims in the state in which such a claim arises. See Wallace v. Kato, 549 U.S. 384, 387 (2007); Kach v. Hose, 589 F.3d 626, 639 (3d Cir. 2009).

Plaintiff's claims arose in Pennsylvania; thus, the applicable statute of limitations is Pennsylvania's two-year statute of limitations for personal injury actions. 42 Pa. Cons. Stat. Ann. §5524(2). The statute of limitations period accrues when the plaintiff knows or has reason to know of the injury which is the basis of the §1983 action. See Garvin v. City of Phila., 354 F.3d 215 (3d Cir. 2003); Genty v. Resolution Trust Corp., 937 F.2d 899, 919 (3d Cir. 1991).

Plaintiff complains of being recommended to participate in Thinking for a Change in 2015 and the Mod-High Intensity program in 2016 and being transferred to SCI Huntingdon in April 2017 and denied his recommended treatment programs in the DTU from April 2017 until May 2019. (Doc. 68 ¶¶23-24). He further claims that CRNP Cousins discontinued his medications in retaliation for filing grievances that he filed against her and other Defendants in November and December of 2017 and January, February, and March of 2018. (Doc. 68, ¶33). Plaintiff filed the instant action on February 3, 2020. (Doc. 1). Consequently, any claims based on events prior to February 3, 2018 are barred as a matter of law.

Thus, Plaintiff will be granted one final opportunity to file a second amended complaint concerning events after February 3, 2018 and conforming to the dictates of Federal Rules of Civil Procedure 8 and 20. Plaintiff, a frequent litigant, is more than familiar with the dictates of the Federal Rules of Civil Procedure.

Rule 8(d)(1) states, in pertinent part, that "[e]ach allegation must be simple, concise, and direct." Rule 20(a)(2), states that "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences;

- 15 -

and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). Although Rule 20 is a flexible rule that allows fairness and judicial economy, the rule only permits "joinder in a single action of all persons asserting, or defending against, a joint, several, or alternative right to relief that arises out of the same transaction or occurrence and presents a common question of law or fact." 7 Charles Allen Wright, Arthur Miller & Mary Kay Kane, Federal Practice and Procedure §1652 at 371-72 (1986).

Plaintiff's failure to file a second amended complaint in accordance with this Court's directive herein will result in Plaintiff's action being dismissed with prejudice.

IV. **Conclusion**

For the above stated reasons, the Court will grant Huntingdon County's motion to dismiss. Huntingdon County will be terminated as a named Defendant. The remaining Defendants' motions to dismiss will be granted and Plaintiff will be afforded one final opportunity to file a second amended complaint. Failure to file a second amended complaint in accordance with the dictates of Federal Rules of Civil Procedure 8 and 20 will result in the action being dismissed with prejudice.

An appropriate Order follows.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: September 29, 2022**
20-0180-02